**Opinion issued December 12, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-24-00585-CV**

_____

**IN RE DAVID DICK, Relator**

---

**Original Proceeding on Petition for Writ of Mandamus**

---

**MEMORANDUM OPINION**

Relator, David Dick, filed a petition for writ of mandamus challenging the trial court's July 24, 2024 order denying his motion to dismiss, filed pursuant to Texas Rule of Civil Procedure 91a.[1] In his motion, relator sought dismissal of the claims asserted by real party in interest, Allied Trust Insurance Company (Allied),

---

[1] *See* TEX. R. CIV. P. 91a.

in the underlying lawsuit.[2]  Relator's mandamus petition requests that this Court issue a writ of mandamus directing the trial court to "vacate its order denying [relator's] Rule 91a motion to dismiss," "[o]rder the trial court to enter an order granting the Rule 91a motion and dismissing all of Allied's claims against [r]elator with prejudice," and "[a]ward [r]elator his reasonable attorney's fees and costs."

The Court requested a response to the petition for writ of mandamus, and Allied filed a response to the mandamus petition.  Relator also filed a reply in support of his petition.

We deny relator's petition for writ of mandamus in part, and conditionally grant relator's petition for writ of mandamus in part.

## Background

Relator obtained an insurance policy from Allied covering a residential property located at 5603 Blossom Street, Houston, Texas 77007 (the property).  The policy documents reflect that the relevant coverage period for the Allied policy began on March 24, 2023.  The underlying litigation arises out of a claim made under the Allied policy by relator in connection with an alleged loss at the property.  Specifically, the claim under the Allied policy alleged that the property sustained covered roof damage on March 30, 2023.

---

[2]  The underlying case is *Allied Trust Ins. Co. v. David Dick and Dick Law Firm, PLLC*, Cause No. 1227457, in the County Civil Court at Law No. 2 of Harris County, Texas, the Honorable Jim Kovach presiding.

Separately, but also on March 30, 2023, Allied completed its underwriting inspection of the property which, notably, "showed age, wear, and tear to the property's roof." Based on this underwriting inspection, on June 15, 2023, Allied notified relator of its intention to cancel the policy covering the property, submitting its "Notice of Cancellation" of the policy "due to roof concerns."

On June 20, 2023, after relator was notified that Allied was cancelling the policy covering the property, relator submitted a claim under the Allied policy. Relator's claim alleged a loss occurred on March 30, 2023, during the coverage period, to the roof of the property. Relator asserted that the loss was caused by wind. On June 29, 2023, relator's legal counsel, Dick Law Firm, PLLC (the Dick Law Firm) sent a letter of representation to Allied.

On June 20, 2023, the same day the Allied claim was submitted, relator also submitted a claim of loss on the property to a separate insurer, Swyfft, on behalf of Clear Blue Insurance Company (Swyfft). The mandamus record reflects that the Swyfft policy covered the property for the period of March 23, 2022 to March 23, 2023. In the Swyfft claim, relator alleged roof damage due to a windstorm on January 24, 2023. On June 28, 2023, the Dick Law Firm sent a letter of representation to Swyfft.

On July 13, 2023, the Dick Law Firm sent an estimate of damage to Allied. The estimate was created by "R. Martinez Consulting" and alleged that the property

required repairs and remodeling in the amount of $99,303.71 to remedy the damage sustained, purportedly caused by wind on March 30, 2023. The estimate alleged that the property required a roof replacement, as well as interior repairs and remodeling to the master bath, a hallway, and a balcony.

The Dick Law Firm simultaneously sent the R. Martinez Consulting estimate to Swyfft in connection with relator's claim of loss on that policy. The estimate submitted to Swyfft, in support of relator's alleged loss from a January 24, 2023 windstorm, was identical to the estimate submitted to Allied for damages purportedly caused by wind on March 30, 2023. The R. Martinez Consulting estimate does not reference the claim number for either relator's claim under his Allied policy or his claim made under the Swyfft policy. In its live pleading, Allied alleged that, at the time the R. Martinez Consulting estimate was submitted to Allied, Allied was not aware that relator had also made a claim on the Swyfft policy for the same damage to the property.

In connection with the Allied claim, the property was inspected by an Allied independent field adjuster. In a July 14, 2023 report, the independent adjuster concluded that the replacement cost value of the damage to the property was $17,358.21. Based on the conclusions from the independent field adjuster's inspection, on July 25, 2023, Allied made a payment to the Dick Law Firm in the

amount of $1,446.23, which represented the replacement cost value minus the policy's $8,860 deductible and $7,051.98 of "[r]ecoverable [d]epreciation."

However, due to the apparent disagreement in the alleged amount of loss ($17,358.21 versus $99,303.71), Allied invoked the policy's appraisal provision to reach a potential agreement on the amount of loss. On August 30, 2023, an appraisal award, signed by both Allied's chosen appraiser and relator's chosen appraiser, concluded that the replacement cost to repair the property was $27,492.34. In connection with the appraisal award, Allied submitted an additional payment of $12,783.91 to the Dick Law Firm. This payment represented the replacement cost value minus the $8,860 deductible, $4,492.20 of recoverable depreciation, and the $1,446.23 prior payment by Allied.

While the appraisal process was ongoing, and unbeknownst to Allied, on July 27, 2023, relator submitted a "Sworn Proof of Loss" to Swyfft claiming that his damages were in the amount of $82,570.91, representing the R. Martinez Consulting estimate of $99,303.71 less the $15,732.80 deductible called for in the Swyfft policy. However, as alleged in Allied's live pleading, on November 2, 2023, Swyfft denied relator's claim, concluding that "the damages outlined [in relator's claim] were claimed and indemnified with Allied . . . claim number 231254 with date of loss 3/28/23 and reported on 6/20/2023." According to the facts presented in Allied's live pleading, Swyfft further noted that "[o]ther damage was found to be the result

5

of faulty workmanship, age-related wear and tear and deferred maintenance." After being made aware of the claim denial, relator sought to initiate the appraisal process called for in the Swyfft policy. However, the mandamus petition and record provide no further insight regarding the status of the claim made under the Swyfft policy.

According to Allied's live pleading, on January 18, 2024, the Dick Law Firm sent a post-appraisal demand letter to Allied seeking $10,000 in attorney's fees, $2,720.60 in interest and approximately $4,402 in "withheld depreciation." Allied reportedly responded to the demand letter on March 13, 2024, rejecting the demand for any further payments to relator. Allied's live pleading indicates that in its letter, Allied noted that the demand for attorney's fees was not supported by any documentation of the fees incurred by relator, and further notified relator that Allied had become aware of the Swyfft claim, arguing that relator, through the Dick Law Firm, was engaging in fraudulent conduct to "induc[e] Allied . . . to believe that there was a dispute as to the amount of loss."

Allied subsequently initiated the underlying litigation, alleging that relator's omissions "prejudiced" Allied's investigation of relator's claim; induced Allied to pay relator's "claim made for the same damages with another carrier, which claim information [relator] concealed from Allied;" "induced" Allied to believe "that there was a dispute solely as to the amount of loss;" "induced" Allied to "invoke the Policy's Appraisal Condition to set what Allied . . . believed, in good faith at that

time, was the disputed amount of loss;" "fraudulently induced [Allied] to pay sums and amounts which were not legally and/or contractually owed" to relator; "induced [Allied] to provide payment for the claimed covered damages of [relator], which were otherwise not legally and/or contractually owed" to relator; and caused Allied to incur "costs, fees, and expenses."

Relying on these allegations, Allied asserted causes of action for: (1) concealment and fraud/conspiracy to commit fraud, (2) violation of the Texas Theft Liability Act, (3) unjust enrichment, and (4) judicial declarations pursuant to the Uniform Declaratory Judgments Act.

In response to Allied's suit, relator filed a motion to dismiss under Texas Rule of Civil Procedure 91a, asserting that Allied had failed to state a valid claim under Texas law. Specifically, relator alleged that Allied's petition was "entirely devoid of facts to support" Allied's claims. According to relator, the suit failed to "identify any alleged misrepresentation, any property allegedly stolen, any benefit unjustly retained by [relator], or any legal controversy that require[d] a declaratory judgment." Instead, relator asserted that the lawsuit "simply recite[d] the elements of [the] causes of action without any factual enhancement."

Allied filed a response to relator's Rule 91a motion to dismiss, arguing that relator's motion failed to meet the high burden to obtain relief under Rule 91a, which only permitted early case dismissal of a cause of action that had "no basis in law or

fact." Allied asserted that dismissal was only appropriate where "no reasonable person could believe the facts as pleaded." Allied further asserted that, at the early posture of a case, Rule 91a required the trial court to "construe the pleadings liberally in favor of the plaintiff" and "the fair notice pleading standard applicable in Texas [must be applied] to determine whether the allegations of the petition [were] sufficient to allege a cause of action."

In direct response to relator's argument that Allied's suit was "entirely devoid of facts to support" its claims, Allied asserted that relator's motion "fail[ed] to address [several] key facts asserted by Allied . . . supportive of its claims."

Relator also filed a reply in support of his Rule 91a motion to dismiss. Allied then filed a "First Supplemental Response" to relator's reply in support of the Rule 91a motion, and relator filed a "Supplemental Reply in Support of His Rule 91a Motion to Dismiss."

The trial court denied relator's Rule 91a motion to dismiss on July 24, 2024. The trial court's order did not state the basis for denial. Relator then filed the instant mandamus petition, and the Court requested a response. Allied filed a response to relator's petition for writ of mandamus, and relator filed a reply in support of his request for mandamus relief.

## Standard of Review

Mandamus is an extraordinary remedy that is only available in limited circumstances. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992). Mandamus relief is only appropriate where the relator establishes that the trial court abused its discretion or violated a legal duty imposed by law, and he has no adequate remedy by appeal. *See id.*; *see also In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005). A trial court clearly abuses its discretion where it "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it fails to analyze the law correctly or apply the law correctly to the facts." *See In re Cerberus Cap. Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005).

With respect to whether a relator has an adequate remedy by appeal, generally, "[m]andamus should not issue to correct grievances that may be addressed by other remedies." *In re Columbia Med. Ctr. Of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 207 (Tex. 2009). However, the "adequacy of an appellate remedy must be determined by balancing the benefits of mandamus relief against the detriments." *See In re Team Rocket, L.P.*, 256 S.W.3d 25, 262 (Tex. 2008). In balancing these interests, "mandamus relief is appropriate to spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re John G. & Marie Stela Kenedy Mem'l Found.*, 315 S.W.3d 519, 523 (Tex. 2010).

The Texas Supreme Court has held that where a trial court erroneously denies a Rule 91a motion to dismiss, "mandamus relief is appropriate to spare the parties and the public the time and money spent on fatally flawed proceedings." *See In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 276–77 (Tex. 2021) (concluding relator entitled to mandamus relief from trial court's denial of Rule 91a motion to dismiss cause of action that was "not permitted" by law); *see also In re Houston Specialty Ins. Co.*, 569 S.W.3d 138, 141–42 (Tex. 2019) (concluding relator lacked adequate remedy by appeal where trial court erroneously denied Rule 91a motion to dismiss "[a] legally invalid lawsuit"); *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014). Accordingly, to the extent that we conclude relator has established an abuse of discretion by the trial court, he is entitled to mandamus relief.

## Analysis

In his mandamus petition, relator argues that the trial court abused its discretion in denying his Rule 91a motion to dismiss because (1) Allied's fraud and concealment claims fail as a matter of law, (2) Allied's Texas Theft Liability Act claim fails as a matter of law, (3) Allied's unjust enrichment claim is inadequately pled, and (4) Allied's request for declaratory relief is improper.

Relator further asserts that he lacked an adequate remedy by appeal, making mandamus relief the "appropriate remedy." As noted above, the Texas Supreme Court has concluded that where a trial court errs in denying a Rule 91a motion to

dismiss, a relator lacks an adequate remedy by appeal. For that reason, our analysis is limited to determining whether relator established an abuse of discretion by the trial court.

We conclude that relator has failed to establish that the trial court abused its discretion in denying its Rule 91a motion to dismiss with respect to Allied's claims for unjust enrichment and declaratory relief and deny relator's mandamus petition with respect to those claims. However, for the reasons discussed below, we conclude that the trial court abused its discretion by denying relator's Rule 91a motion to dismiss with respect to Allied's fraud and fraudulent concealment claims and its claim for violations of the Texas Theft Liability Act. Accordingly, we grant in part relator's petition for writ of mandamus to the extent that the trial court's order denied relator's Rule 91a motion to dismiss as to those claims.

A.    Rule 91a Standard

Rule 91a permits a party to move for early dismissal of a cause of action on the ground that it has "no basis in law or fact." *See* TEX R. CIV. P. 91a.1*; see also Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020). A cause of action has no basis in law if the allegations, taken as true, together with any inferences reasonably drawn from them, do not entitle the claimant to the relief sought. *See Bethel*, 595 S.W.3d at 654. A cause of action has no basis in fact if no reasonable person could believe the facts as pleaded. *Id.*

11

In reviewing a trial court's decision on a Rule 91a motion to dismiss, we may not consider any evidence. *See In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653, 659 (Tex. 2023). Instead, our determination is based solely on the substance of the Rule 91a motion, the plaintiff's live pleadings, and any pleading exhibits permitted by the Texas Rules of Civil Procedure. *Id.* at 660.

In his mandamus petition, relator argues that the trial court erred in denying his Rule 91a motion to dismiss because (1) Allied's fraud and concealment claims fail as a matter of law, (2) Allied's claim pursuant to the Texas Theft Liability Act fails as a matter of law, (3) Allied's unjust enrichment claim is "inadequately pled," and (4) Allied's "declaratory relief claim is improper."

B.    Fraud and Concealment Claims

Relator's petition first asserts that Allied's fraud and concealment claims "fail as a matter of law." Relator's petition argues that the trial court abused its discretion by denying his Rule 91a motion in connection with Allied's fraud and concealment claims because "Allied's petition fail[ed] to allege any specific misrepresentation or duty to disclose, as required by Texas law."

To prevail on its fraud claim, Allied would be required to establish that relator: (1) made a material misrepresentation; (2) that was false; (3) when the representation was made, relator knew it was false or made it recklessly as a positive assertion without any knowledge of its truth; (4) relator made the representation with the intent

12

that Allied should act upon it; (5) Allied actually and justifiably relied on the representation; and (6) Allied thereby suffered injury. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018).

Relator argues that Allied's live pleading "d[id] not identify any specific misrepresentation allegedly made by [relator] to Allied." Specifically, "Allied [did] not allege[] that [relator] made any false statement to Allied about the existence of other claims or policies."

Similarly, to prevail on a claim of fraudulent concealment, or "fraud by nondisclosure," Allied would be required to establish that: (1) relator failed to disclose facts to Allied, (2) relator had a duty to disclose those facts, (3) the facts were material, (4) relator knew Allied was ignorant of the facts and Allied did not have an equal opportunity to discover the facts, (5) relator was deliberately silent when he had a duty to speak, (6) by failing to disclose the facts, relator intended to induce Allied to take some action or refrain from acting, (7) Allied relied on relator's nondisclosure, and (8) Allied was injured as a result of acting without that knowledge. *See Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Regarding the fraudulent concealment claim, relator asserted in his mandamus petition that "Allied fail[ed] to allege facts showing that [relator] had a duty" of disclosure to Allied. To this end, in its live pleading, Allied appears to allege that

13

relator is liable for concealing, or failing to disclose, that he made a claim on his Swyfft policy for the same roof damage identified in the Allied claim. Relator argues that no such duty exists, and absent such duty, he cannot be liable on a claim of fraudulent concealment.

In its response to relator's petition, Allied identified several factual allegations from its live pleading which it asserts relator "fail[ed] to address," and which it contends are "supportive" of Allied's fraud claims:

(1) Relator submitted a claim to Allied on June 20, 2023 for damage to his roof;

(2) "[J]ust [thirty-six] minutes after reporting [his claim] to Allied," relator submitted his claim to Swyfft for damage to his roof;

(3) Relator submitted identical estimates of damage to both Allied and Swyfft, neither of which referenced his respective insurance claims;

(4) The "submission of an identical claim for damages" to Swyfft was unknown to Allied at the time, and Allied was "induced to believe there was a dispute as to the amount of loss";

(5) Relator's post-appraisal demand for attorney's fees "was unsupported by any documentation";

(6) Relator's "actions/omissions" of submitting the same claim of damages to Swyfft "was concealed" from Allied;

(7) Relator's "actions/omissions" caused Allied "to believe, in good faith at that time, that a dispute as to the amount of loss existed" and Allied was induced to invoke appraisal;

(8) Relator's "actions/omissions" induced Allied to pay amounts which were not legally or contractually owed to relator;

14

(9)     Relator's "actions/omissions" induced Allied to pay the claimed covered damage to relator, which were not otherwise legally or contractually owed;

(10)    Relator's "material misrepresentations, including by omission, and failure to comply with the Policy," prejudiced Allied and caused it to incur fees and costs; and

(11)    Relator's "material misrepresentations and/or concealment, including by omission, resulted in the same exact claimed damages being submitted virtually simultaneously . . . to two different carriers, with two different dates of loss alleged."

The facts as alleged by Allied in response to the mandamus petition appear to be aimed at establishing a common thesis: relator submitted claims to two insurers, Allied and Swyfft, seeking coverage for the same damage, despite alleging different dates of loss, and that relator failed to disclose the Swyfft claim to Allied.

However, these facts, even taking them as true, do not identify any affirmative, material misrepresentation by relator to Allied, an essential element of a claim for fraud. For example, Allied does not assert that, in conducting its investigation into relator's claim, it inquired whether relator had separate coverage that potentially covered the loss, or whether relator had submitted a claim, or claims, for the same damage to another insurer, and that relator made a misrepresentation regarding the Swyfft coverage and claim. Instead, Allied suggests that the mere fact that relator made two claims, with two different dates of loss including the same damage, amounted to a "misrepresentation."

15

We disagree with that suggestion and conclude that the facts as alleged by Allied, even if established as true, would not constitute an affirmative misrepresentation by relator. Accordingly, the facts alleged by Allied cannot support a claim of fraud, have no basis in law, and the trial court therefore erred in denying relator's Rule 91a motion to dismiss with respect to Allied's fraud claim.

Allied further asserts that relator "concealed" the Swyfft claim, seeking coverage for the same damage to the property's roof. While the mandamus record implies that relator did, in fact, "conceal" the Swyfft claim, Allied's response to the mandamus petition fails to establish that relator had an affirmative duty to disclose that fact. *See Horizon Shipbuilding, Inc.*, 324 S.W.3d at 850 (prevailing on cause of action for fraudulent concealment requires establishing duty to disclose).

Texas law generally only imposes a duty to disclose in confidential or fiduciary relationships. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). Accordingly, we can infer that, absent a confidential or fiduciary relationship, no duty of disclosure generally exists. Here, relator asserted that Allied "faile[ed] to allege facts showing that [relator] had a duty to disclose the existence" of the Swyfft claim and that absent "a duty to disclose, [Allied's] concealment claim [could not] stand."

In response to the mandamus petition, Allied argued that, based on the facts alleged, a "reasonable person could conclude . . . that [relator] committed material

misrepresentations—namely, failing to inform and/or concealing from Allied . . . that [relator was] reporting the same claim/submitting the same estimate of damage and making an identical claim for damages to [two] different carriers and alleging two different dates of loss." As the underlying litigation develops, these facts may be established as true. However, these facts, in and of themselves, do not support a cause of action for fraudulent concealment because Allied has not alleged facts to support that relator had a duty to disclose the Swyfft claim to Allied.

Accordingly, the facts alleged by Allied in its live pleading cannot support a claim of fraudulent concealment, have no basis in law, and the trial court therefore erred in denying relator's Rule 91a motion to dismiss with respect to Allied's fraudulent concealment claim.

## C. Texas Theft Liability Act

Relator's mandamus petition further asserts that Allied's claim for violations of the Texas Theft Liability Act "fails as a matter of law." Relator argued that the trial court abused its discretion by denying his Rule 91a motion to dismiss because Allied "fail[ed] to allege facts showing unlawful appropriation of property or services without effective consent."

The Texas Theft Liability Act makes any "person who commits theft . . . liable for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE ANN. § 134.003(a). The statute defines theft as the unlawful appropriation of

17

property or "unlawfully obtaining services" as described by the Texas Penal Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.002(2).

Relator's mandamus petition argues that Allied did "not allege[] facts showing how [relator] unlawfully appropriated property or obtained services from Allied without Allied's effective consent." In its live pleading, Allied alleged that relator "acted knowingly and/or intentionally in committing acts and/or omissions which constituted 'theft'" under the statute. In its response to relator's mandamus petition, Allied asserted that relator "unlawfully appropriated funds/services" from Allied based on his "concealing and/or misrepresenting the fact that [relator] reported the exact same damages claimed for two different dates of loss to two different carriers."

However, as discussed above, the facts as alleged by Allied do not establish any affirmative "misrepresentation" or that relator had any duty to disclose the existence of the Swyfft claim. Instead, relator's mandamus petition posits that Allied's suit "contain[ed] no such allegations," and "merely recite[d] the elements of the statute without providing any factual support." Absent such a showing, Allied did not allege facts which could support obtaining relief under the Texas Theft Liability Act because Allied cannot establish the element of theft required under the statute.

18

Accordingly, Allied's claim seeking relief for violations of the Texas Theft Liability Act has no basis in law, and the trial court abused its discretion in denying relator's Rule 91a motion to dismiss with respect to Allied's claim under the Texas Theft Liability Act.

D.     Unjust Enrichment and Request for Declaratory Judgment

Relator's mandamus petition further asserts that Allied's unjust enrichment claim was "inadequately pled" and that Allied's request for declaratory relief was "improper," and the trial court therefore abused its discretion in denying his Rule 91a motion to dismiss with respect to these claims. Based on our review of relator's mandamus petition, Allied's response, relator's reply, the mandamus record, and our analysis and conclusions herein, we conclude that relator has failed to establish that the trial court abused its discretion by denying relator's Rule 91a motion to dismiss with respect to Allied's claims for unjust enrichment and request for declaratory relief.

**Conclusion**

We conclude that Allied's claims for fraud, fraudulent concealment, and violations of the Texas Theft Liability Act have no basis in law, and therefore conditionally grant mandamus relief, in part, with respect to these causes of action. We therefore direct the trial court to vacate its July 24, 2024 "Order Denying Rule 91a Motion to Dismiss" and enter an order granting relator's Rule 91a motion in part

and dismiss Allied's claims for fraud, fraudulent concealment, and for violations of the Texas Theft Liability Act.

However, we deny relator's petition for writ of mandamus with respect to Allied's claims for unjust enrichment and declaratory relief.

We are confident that the trial court will comply with this Court's ruling, and the writ will issue only if the trial court fails to comply within thirty days of the date of this opinion. All pending motions are dismissed as moot.



        Amparo Monique Guerra
        Justice


Panel consists of Justices Kelly, Hightower, and Guerra.